IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SARA NELSON,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>Kilolo Kijakazi,[1]<br>*Acting Commissioner of Social Security*,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 21-186<br>)<br>)<br>)<br>) |

ORDER

AND NOW, this 18th day of February 2022, the Court, having considered the parties' motions for summary judgment, will grant Defendant's motion except as to costs.[2] The final agency decision wherein the Administrative Law Judge ("ALJ") dismissed Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, and denied her application for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence. Therefore, it will be affirmed. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).[3]

---

[1]　　Kilolo Kijakazi is substituted as Defendant, replacing former Commissioner Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). The change has no impact on the case. 42 U.S.C. § 405(g). The Clerk is directed to amend the docket.

[2]　　Defendant's request for relief includes summary judgment in its favor and that costs be taxed against Plaintiff, but Defendant does not address costs in its accompanying brief. (Doc. No. 12, pg. 2). Accordingly, the Court will not award costs. *See Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996).

[3]　　Plaintiff applied for DIB and SSI benefits in 2015 but amended her application before the ALJ in such a way as necessitated dismissal of the DIB application. (R. 14, 581). The ALJ denied Plaintiff's SSI application (R. 26), and Plaintiff challenged that decision before the Honorable Judge Ambrose, United States District Judge for the Western District of Pennsylvania. The Court remanded this matter to the Commissioner for further proceedings, having found the ALJ had failed to, *inter alia*, show that he considered the "mental impairment statement" authored by Plaintiff's treating psychiatrist wherein she opined that Plaintiff had

1

"numerous signs and symptoms related to . . . PTSD and general anxiety" and could not "work a normal work day / work week." *Nelson v. Saul*, No. CV 19-9, 2020 WL 621215, at *3 (W.D. Pa. Feb. 10, 2020). Plaintiff had returned to work by the time she appeared before the ALJ on remand and, therefore, indicated her intent to pursue a closed period of disability from February 2014 through May 2019. (R. 607, 609). After considering the evidence probative of Plaintiff's alleged disability during that time, the ALJ returned a second non-disability determination. (R. 596). That decision became the final agency decision in this matter upon the Appeals Council's decision not to review it. 20 C.F.R. § 416.1481.

Before the Court a second time, Plaintiff argues the ALJ's most recent decision is infirm because the ALJ failed to adequately explain why he found medical opinions offered by Plaintiff's licensed clinical social worker ("LCSW"), treating psychiatrist, and the consultative examiner ("CE") were not entitled to more than little weight. Plaintiff also argues that the ALJ failed to acknowledge evidence in the record that supported the medical opinion evidence. Similarly, Plaintiff argues that the ALJ failed to account for consistencies among those medical opinions. Finally, Plaintiff argues that, after the ALJ discounted the medical opinion evidence, he went on to formulate Plaintiff's residual functional capacity ("RFC") without reference to a medical opinion that supported his findings. As explained herein, the Court finds Plaintiff's arguments unpersuasive, and will therefore order summary judgment in Defendant's favor.

An ALJ's findings must be supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted). Though this standard is deferential, ALJs may not overlook "pertinent or probative evidence without explanation." *Kerik v. Astrue*, No. CIV.A.08-00059, 2008 WL 2914793, at *9 (W.D. Pa. July 24, 2008) (citing *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008)). Further, when ALJs consider medical opinion evidence, they are directed to "evaluate every medical opinion." 20 C.F.R. § 416.927(c) (explaining evaluation of medical opinion evidence for applications filed before March 27, 2017). When deciding how much weight to afford medical opinions, ALJs consider the "[e]xamining relationship," "[t]reatment relationship," "[s]upportability," "[c]onsistency," "[s]pecialization," and "[o]ther factors." *Id.* § 416.927(c)(1)—(6). Because this matter concerns an application filed prior to March 27, 2017, the "treating-physician rule" applies. *See Galloway v. Comm'r of Soc. Sec.*, No. CV 20-4669, 2021 WL 4477145, at *3 n.3 (E.D. Pa. Sept. 30, 2021). Pursuant to the rule, opinions provided by treating physicians may be given preference—or even controlling weight—because it is often the case that they can provide unique insight into a claimant's physical and/or mental condition. 20 C.F.R. § 416.927(c)(2). It is appropriate to afford a treating physician's medical opinion controlling weight where it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.*

Plaintiff's first challenge to the ALJ's decision is that he failed to provide adequate justification for the weight he afforded medical opinions in the record provided by Plaintiff's LCSW, treating psychiatrist, and the CE. (Doc. No. 11, pgs. 15, 21). The Court, however, finds the ALJ's articulation of his weight determinations for those opinions to be adequate. The ALJ

afforded the LCSW's opinion "little weight" due, in part, to the nature of the treating relationship. (R. 588). The LCSW only saw Plaintiff three times in 2014, and her work with Plaintiff was directed at addressing her "symptoms of depression as well as difficulty coping with [her] infant son's death at 5 days old" on February 6, 2014. (R. 405). On May 20, 2014, the LCSW filled out a "REPORT OF PHYSICAL/MENTAL EXAMINATION" wherein she diagnosed Plaintiff with recurrent major depressive disorder ("MDD") and post-traumatic stress disorder ("PTSD"), and further indicated Plaintiff could only work up to thirty hours/week. (R. 244—45). Considering the opinion, the ALJ discounted its value not only because the treating relationship was short-lived, but also because he found that though Plaintiff's symptoms at the time were reasonable given the recency of her son's death, subsequent records showed improvement with time and treatment. (R. 588). Because the duration and frequency of treatment are relevant to determining a medical opinion's value, 20 C.F.R. § 416.927(c)(2)(i)—(ii), the Court is satisfied with the ALJ's explanation for the weight he afforded that opinion.

The Court is similarly satisfied with the ALJ's consideration of the treating psychiatrist's opinions. The ALJ afforded the treating psychiatrist's opinions that Plaintiff could not work a normal day/week and was markedly limited in certain respects "very little weight." (R. 591). The treating psychiatrist, Dr. Nadkarni, started seeing Plaintiff in February 2016 and completed "MENTAL IMPAIRMENT" and "MEDICAL ASSESSMENT OF ABILITY TO DO WORK-RELATED ACTIVITIES (MENTAL)" forms in 2017. (R. 572—74). Therein she addressed Plaintiff's diagnoses, symptoms, and work-related limitations, opining marked limitations in the ability to "[d]eal with work stress," and in understanding, remembering, and executing even simple instructions. (R. 573—74). She further checked a box to indicate Plaintiff could not work a normal day or week. (R. 572). The ALJ found these opinions to be inconsistent with Dr. Nadkarni's "contemporaneously created treatment notes" that showed Plaintiff was "doing well" and had no "significant abnormalities" during exams, though the ALJ did acknowledge that Plaintiff continued to experience some difficulties, like anxious mood. (R. 590—91). As consistency with the record is an appropriate criterion to consider when evaluating medical opinion evidence, 20 C.F.R. § 416.927(c)(4), the Court finds no fault in the ALJ's explanation for diminishing the weight afforded Dr. Nadkarni's opinions due to inconsistency with treatment notes from around the same time. The ALJ's assessment in that regard is borne out by the record. For instance, while Dr. Nadkarni opined Plaintiff's limitations precluded all work, her treatment notes from 2016 and 2017 depict Plaintiff as fully oriented with intact attention and memory, among other generally positive findings. (R. 430—36, 576). Because the ALJ's explanation is adequate and not contradicted by the record, the Court finds no error in it.

The ALJ's consideration of the CE's opinion is also satisfactory. The ALJ afforded the CE's opinion "little weight" at least in part because, at the time of evaluation, Plaintiff had not yet received mental health treatment but improved when she soon thereafter received appropriate care through voluntary hospitalization and subsequent treatment. (R. 593). The CE evaluated Plaintiff in November 2015, shortly before Plaintiff was hospitalized in December. (R. 408). At that time, the CE found Plaintiff's attention and concentration impaired, and her memory mildly impaired, but further found she had good insight and judgment, as well as average intellectual

functioning. (R. 410). The CE opined Plaintiff would be markedly limited in understanding, remembering, and carrying out complex instructions, as well as markedly limited in interacting with others and responding to usual work situations and routine changes appropriately. (R. 413—14). The ALJ considered these opinions but ultimately found that Plaintiff's condition at the time of the evaluation was not "reflective of her true functional abilities" because she was at a particularly low moment and improved greatly with the treatment that followed. (R. 593). The ALJ's explanation is logically coherent and supported by the record, therefore the Court will not disturb it. *See Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) ("We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently.").

In articulating these challenges to the ALJ's consideration of the medical opinion evidence in the record, Plaintiff has suggested the ALJ focused on improvement instead of considering whether the medical opinion evidence reflected disability at "any point of the relevant period." (Doc. No. 11, pg. 18). To the extent Plaintiff here intends to argue that the ALJ should have considered some period of disability other than the one she pursued before the ALJ—February 6, 2014 through May 31, 2019—she has not specifically identified an alternative closed period. For purposes of evaluating Plaintiff's disability during the closed period she chose to pursue, it was reasonable for the ALJ to consider whether Plaintiff's condition at the time of the CE's evaluation and, thus, the CE's opinions reflected Plaintiff's condition not just at that moment but for the claimed closed period. Because Plaintiff has not identified any other closed period the ALJ should have considered, remand is not appropriate. *See Jones v. Comm'r of Soc. Sec.*, 181 Fed. Appx. 767, 773 (11th Cir. 2006) ("Jones's argument on appeal does not sufficiently provide us with the specific 12–month time period for which she believes she is entitled to a closed period of disability."); *see also Phillips v. Barnhart*, 91 Fed. Appx. 775, 782 (3d Cir. 2004) (explaining that where the ALJ made a finding as to the plaintiff's functional capacity for the alleged onset date through the date of decision, the plaintiff could not prevail on his argument that the ALJ failed to consider a closed period of disability for some other "period of twelve consecutive months").

Insofar as Plaintiff has argued that the ALJ myopically focused on evidence of improvement in the record to the exclusion of evidence that corroborated the medical opinion evidence discussed above, the Court is not persuaded by that argument. Plaintiff's improvement was not the ALJ's only consideration as he reviewed the evidence and, more specifically, the medical opinion evidence. As recounted above, the ALJ considered the nature of the LCSW's treating relationship, inconsistencies in Dr. Nadkarni's opinions and concurrent treatment notes, and Plaintiff's seemingly aggravated symptoms at the time of the CE's evaluation. (R. 588, 591, 593). And, though Plaintiff suggests evidence was overlooked, she has not identified which relevant evidence the ALJ actually ignored. For instance, Plaintiff argues that the ALJ failed to acknowledge her depressed and anxious mood at various post-hospitalization mental health appointments. But the ALJ did acknowledge that, even with treatment, Plaintiff continued to experience symptoms like an "anxious mood" and required ongoing medication management. (R. 590). ALJs are not required to account for every negative treatment note in claimants'

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 10) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 12) is GRANTED as specified above.

s/ Alan N. Bloch<br>United States District Judge

ecf:   Counsel of Record

---

medical records.  *See Fargnoli*, 247 F.3d at 42 (explaining that ALJs must fulfill their duty to evaluate the medical evidence in the record but are not expected "to make reference to every relevant treatment note" in cases where the medical records are "voluminous").  Thus, Plaintiff's accusation that the ALJ cherry-picked the evidence to support his decision is not borne out by the decision and record.

The Court need only briefly address Plaintiff's remaining arguments.  Plaintiff has argued that the ALJ overlooked consistencies among the medical opinions that were afforded little weight.  But while consistency is a factor ALJs consider in their evaluation of medical opinion evidence, they are not specifically required to catalogue consistencies between medical opinions in their decisions.  *See* 20 C.F.R. § 416.927(c)(4).  Here, the ALJ adequately explained the weight he assigned the medical opinions in evidence by reference to various factors at Section 416.927(c).  There being no particular format or formula ALJs must follow in their analyses, *Jones v. Barnhart*, 364 F.3d 501, 504–05 (3d Cir. 2004), the Court finds nothing further was required.  Plaintiff's last argument is that the ALJ, having discounted all the medical opinion evidence, lacked a medical opinion to inform his assessment of Plaintiff's mental functioning.  However, this Court has rejected the notion that components of an ALJ's RFC finding must be justified by reference to a specific medical opinion.  *Hornyak v. Colvin*, No. CV 15-74-E, 2016 WL 1255288, at *1 (W.D. Pa. Mar. 30, 2016) (citing *Doty v. Colvin*, 2014 WL 29036 (W.D. Pa. Jan. 2, 2014); *Callahan v. Colvin*, 2014 WL 7408700 (W.D. Pa. Dec. 30, 2014)).  Ultimate issues like RFC findings and determinations of disability are reserved to the ALJ.  20 C.F.R. § 416.927(d).  For this and the foregoing reasons, the Court will order summary judgment in Defendant's favor.